UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JERMAINE D. CARPENTER, | ) |
| Plaintiff, | ) |
| v. | ) 14-3047 |
| GREGG SCOTT, *et al.* | ) |
| Defendants. | ) |

# OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently civilly committed at Rushville Treatment and Detention Facility, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging claims for failure to protect from harm and retaliation. The matter comes before this Court for ruling on the Liberty Healthcare Defendants' Motion for Summary Judgment (Doc. 76) and other preliminary motions filed by the parties.

## PRELIMINARY MATTERS

### Motion to Dismiss Defendant Gregg Scott (Doc. 110)

Defendants filed a motion seeking dismissal of Defendant Gregg Scott. (Doc. 110). In the motion, Defendants state that

Defendant Gregg Scott was dismissed in the Court's Merit Review Opinion (Doc. 7), and that Plaintiff's motion to reconsider that dismissal was denied. (Doc. 51) (Plaintiff's motion to reconsider); (Doc. 72) (Court's Order denying Plaintiff's motion to reconsider). Plaintiff did not file a response to Defendants' motion to dismiss.

Rule 60 of the Federal Rules of Civil Procedure allows a court to correct "a mistake arising from oversight or omission whenever one is found" in the record. Fed. R. Civ. P. 60(a). The Court stated in its Merit Review Opinion that Defendant Scott would be dismissed, but an order to that effect was never entered. (Doc. 7). As a result, Defendant Scott was served with this lawsuit. The Court finds that Defendant Scott should have been previously dismissed. Defendants' motion is granted.

### Plaintiff's Motion for Order Authorizing Release of Records (Doc. 113) and Defendants' Motion to Join (Doc. 119)

Plaintiff filed a Motion for Order Authorizing Release of Records seeking his clinical records for the dates relevant to this lawsuit. (Doc. 113). Defendants Caraway, Jumper, Lodge, Louck, and Reid ("Liberty Healthcare Defendants") filed a response to Plaintiff's motion. (Doc. 115). Defendants Clark, Erhgott, Hankins,

Kunkell, Lay, Mays, Scott, Wear, and Winters ("Rushville Defendants") filed a motion seeking leave to join in the Liberty Healthcare Defendants' response. (Doc. 119). As the response is applicable to both sets of Defendants, the Rushville Defendants' motion to join is granted.

Plaintiff's motion alleges that the documents he seeks are necessary "to make a determination whether the behavior committee documented their decisions in Plaintiff's clinical records as required" by Illinois administrative rules. (Doc. 113 at 1). Plaintiff also seeks disclosure of the identities of those who served on the housing committee for the dates relevant to this lawsuit.

Defendants point out in their response that discovery in this matter closed on September 15, 2015.[1] Plaintiff did not file this motion until July 15, 2016, approximately 10 months after discovery closed and nine (9) months after the Liberty Healthcare Defendants filed their motion for summary judgment. In addition, Defendants provided Plaintiff with copies of the requested

---

[1] Discovery remained open after that date only as it related to Plaintiff's compliance with the Court's Order granting the Rushville Defendants' motion to compel. (Doc. 72). The Court discusses this issue below.

Behavioral Committee documents during discovery, and Plaintiff would have access to his own mental health records.

Plaintiff is effectively asking the Court to reopen discovery on these issues. A district court has considerable discretion in determining whether or not to reopen discovery. Flint v. City of Belvidere, 791 F.3d 764, 768 (7th Cir. 2015) (noting that discovery must have an endpoint and "district courts are entitled to—indeed they must—enforce deadlines."). Rule 6 of the Federal Rules of Civil Procedure allows a district court to extend a deadline, but only where the party failed to act within a deadline "because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Neglect is generally not excusable when a party should have acted before the deadline." Flint, 791 F.3d at 768.

To the extent that Plaintiff does not already have the documents he seeks in his possession, Plaintiff does not elaborate on why he failed to request the documents within the discovery period, or why he then waited more than nine (9) months after the Liberty Healthcare Defendants filed a motion for summary judgment to make this request. Plaintiff's motion is denied.

**Rushville Defendants' Motion for Sanctions (Doc. 99)**

Rushville Defendants filed a renewed Motion for Sanctions (Doc. 99) seeking dismissal for Plaintiff's failure to comply with the Court's Order (Doc. 72) entered August 18, 2015.  In that Order, the Court found that Plaintiff's answers to the Defendants' discovery requests were insufficient and directed Plaintiff to provide more detailed answers.  Plaintiff has not complied.

In his response to the motion for sanctions, Plaintiff claims that the Defendants never re-served him with copies of the discovery requests.  See (Docs. 80, 114).  The Court's Order (Doc. 72) only required the Defendants to re-serve discovery requests as it related to Defendant Clark.  Whatever confusion may have existed does not excuse Plaintiff's failure to comply with the Court's Order.

Therefore, Defendants' Motion for Sanctions is granted, but the Court finds that dismissal is not appropriate at this stage. Within 14 days of this Order, Defendants shall re-serve Plaintiff with the discovery requests in dispute and file a notice of compliance with the Court indicating that they have done so. Within 30 days of being served, Plaintiff shall answer the discovery requests in a manner consistent with the Court's previous order.

Failure to do so will result in dismissal of this case. The Court will also extend the relevant deadlines as detailed below.

### Plaintiff's Motion to Secure Documents (Doc. 116)

Plaintiff filed a Motion to Secure Documents (Doc. 116) seeking to file a partial response to the Liberty Healthcare Defendants' motion for summary judgment. Plaintiff later filed a complete response to the Defendants' motion for summary judgment within the deadlines set by the Court. See (Doc. 122). Plaintiff's motion is denied as moot.

### Motion for Leave to File Document Under Seal (Doc. 77)

Defendants filed a Motion for Leave to File Document under seal. (Doc. 77). Defendants seek to file a copy of the security surveillance video footage from January 13, 2013 under seal. Plaintiff has not opposed this motion. Nonetheless, the Court must make its own determination as to whether good cause exists for sealing the record. See Bond v. Utreras, 585 F.3d 106, 1068 (7th Cir. 2009); Citizens First National Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 944 (7th Cir. 1999)(court must makes its own determination whether good cause exists for sealing the record, despite the parties' agreement); CDIL Local Rule 5.10(2)("The Court

does not approve of the filing of documents under seal as a general matter. A party who has a legal basis for filing a document under seal without a prior court order must electronically file a motion for leave to file under seal.").

As the basis of their motion, Defendants assert that the video depicts images of other residents who are not parties in this case. Defendants also aver that disclosure could present security concerns.

Upon review, the video shows four (4) non-party residents in a room apart from where the January 13, 2014 incident occurred. The video does not disclose the identities of those residents in any manner more intrusive than the information publicly available at the Illinois State Police Sex Offender Registry website. See Illinois Sex Offender Information, available at: http://isp.state.il.us (last accessed August 16, 2016).

In addition, Defendants do not elaborate on what security concerns are posed by disclosure of this video. Therefore, Defendants' motion is denied with leave to renew.

**Plaintiff's Motion for Order (Doc. 123)**

Plaintiff filed a Motion for Order Authorizing Defendants Gregg Scott and Eric Kunkell to Release Confiscated Affidavit. (Doc. 123). In the motion, Plaintiff alleges that an affidavit he was intending to present in his response to the Liberty Healthcare Defendants' motion for summary judgment was confiscated by security staff before Plaintiff could file it. Plaintiff seeks an order directing Defendant Scott and Defendant Kunkel "to release Plaintiff['s] exhibit in this suit . . . [and the non-defendant security therapy aide] be instructed to shake my legal work down but not read it or confiscate exhibits." The Court interprets this motion as a request for injunctive relief.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); accord Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To prevail, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an

irreparable harm will result if the injunction is not granted." <u>Foodcomm Int'l v Barry</u>, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. <u>Incredible Tech., Inc. v. Virtual Tech., Inc.</u>, 400 F.3d 1007, 1011 (7th Cir. 2005).

Plaintiff does not present any evidence that Defendant Scott or Defendant Kunkel are in possession of the confiscated affidavit, nor does Plaintiff allege that they were responsible for the events in question. Therefore, the Court finds that Plaintiff has failed to show a reasonable likelihood of success on the merits. Plaintiff's motion is denied.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. <u>Ogden v. Atterholt</u>, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a

genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff is civilly committed at Rushville Treatment and Detention Facility ("Rushville" or "TDF") pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 Ill. Comp. Stat. § 207/1 *et seq.*  The Liberty Healthcare Defendants were employed at the facility in the following capacities:  Defendant Jumper was the Clinical Director; Defendant Caraway was the Associate Clinical Director; Defendant Lodge and Defendant Louck were Team Leaders; and, Defendant Reid was the Director of Training and Research.  Plaintiff asserts a failure to protect from harm claim against all Liberty Healthcare Defendants and a retaliation claim against Defendant Jumper and Defendant Caraway.

In December 2013, Plaintiff and Resident C, another TDF resident, lived in the same housing pod. According to Plaintiff, the relationship between them became increasingly contentious because "every time I walk by he is calling me all type[s] of bitches and hoes and, you know, talking about me being in group [therapy]." Pl.'s Dep. 17:18-20. On December 15, 2013, the situation escalated, and the two got into a physical fight. When security staff broke it up, Plaintiff was observed holding Resident C on the ground with Plaintiff's arms wrapped around Resident C. Security staff also observed Plaintiff punching and biting Resident C. Plaintiff testified that this was the first time he and Resident C got into a physical altercation.

Plaintiff and Resident C were placed on Temporary Special Management status pending disciplinary hearings for the fight. Plaintiff and Resident C were then housed in the same unit in the facility, albeit in separate pods. Pl.'s Dep. 49:1-7 ("And then they separated us temporarily [after the December fight], put him on Special 1.")

On December 17, 2013, Plaintiff appeared before the Behavioral Committee, comprised of Defendants Jumper, Louck,

and Clark. The records show that Plaintiff was continued on temporary special management status for two (2) days following the hearing.

On December 19, 2013, Plaintiff appeared before the Behavioral Committee, this time composed of Defendants Caraway, Lodge, and Hankins. Plaintiff was removed from temporary special management status and placed on close management status for 30 days. Plaintiff and Resident C remained in separate areas. Pl.'s Dep. 49:13-16 ("Q. And then you both are assigned to [close management] status. And you do your [close management] status on Special 1 and [Resident C] does his [close management] status on Special 2? A. Yes.").

On January 3, 2014, the Behavioral Committee, comprised of Defendant Hankins, Defendant Caraway, and a non-defendant TDF official, found Plaintiff guilty of yelling and cussing at Resident C. (Doc. 76-2 at 7) ("After cuffing him, [Plaintiff] began shouting at [Resident C] who was on another pod."). The Behavioral Committee extended Plaintiff's close management status for seven (7) days.

On January 13, 2013, Resident C attacked Plaintiff while Plaintiff was being escorted in handcuffs by Defendant Lay, a

Security Therapy Aide Sergeant. The attack occurred in a common area shared by the separate pods in the unit. Resident C was present in the area presumably for purposes of completing his cleaning assignment that day. Security staff separated Plaintiff and Resident C. Both were bleeding after the incident, and both received timely medical treatment.

The Behavioral Committee, composed of Defendant Jumper, Defendant Reid, and Defendant Hankins, found Plaintiff guilty of fighting for his role in the January 2013 attack. Plaintiff's close management status was extended for 15 days. (Doc. 76-3 at 2).

## ANALYSIS

### Failure to Protect

Plaintiff was a civil detainee and his rights are derived from the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment. Burton v. Downey, 805 F.3d 776, 784 (7th Cir. 2015) (citing Pittman v. Cnty. of Madison, 746 F.3d 766, 775 (7th Cir. 2014)). The standards under the respective amendments are essentially the same. Id. (citing Smego v. Mitchell, 723 F.3d 752, 756 (7th Cir. 2013)).

To succeed on a failure to protect claim, a plaintiff must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and, (2) officials acted with "deliberate indifference" to that risk.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  For purposes of satisfying the first prong, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a [detainee] faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."  Id. at 843.  An official acts with deliberate indifference if he "knows of and disregards an excessive risk to [detainee] health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to . . . officials about a specific threat to his safety."  Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996) (quoting McGill v. Duckworth, 944 F.3d 344, 349 (7th Cir. 1991)).  Liability attaches where "deliberate indifference by prison officials effectively condones the attack by allowing it to happen...."  Haley v. Gross, 86 F.3d 630, 640 (7th Cir. 1996).

Plaintiff admits that none of these Defendants was present during the alleged altercations. Pl.'s Dep. pp. 10-16. Plaintiff asserted in his deposition that the Liberty Healthcare Defendants serving on the Behavioral Committee could have done more to ensure that the January 15, 2014 attack did not occur. Id. 19:22-20:5. Assuming the members of the Behavioral Committee had at least some authority to take the preventive actions Plaintiff desired, the documentation before them after the December 2013 fight disclosed that Plaintiff was observed punching and biting Resident C and that Plaintiff was on top of Resident C, holding him down.

In addition, Plaintiff admitted in his deposition to his own history of physical altercations with other residents where he was the aggressor. Id. 33:20-23 ("And I got into a fight with a guy named Resident G, and in the midst of that fight I bit him. I beat him up way worse than the fight that me and Resident C had."). Combined with Plaintiff's discipline for yelling and cussing in the interim between each physical altercation with Resident C, the record does not support a finding that Plaintiff faced a substantial risk of harm from Resident C, or that the Liberty Healthcare Defendants were aware of any propensity for violence Resident C

displayed towards other residents. Even if it did, the record discloses that Plaintiff was either separated from Resident C in different housing pods, or that Plaintiff was escorted by security staff while outside the pods. Therefore, the Court finds that no reasonable juror could conclude that the Liberty Healthcare Defendants are constitutionally liable for failure to protect.

## Retaliation

To prevail on a retaliation claim, the Plaintiff must show that he engaged in activity protected by the First Amendment; he suffered a deprivation that would likely deter First Amendment activity in the future; and the First Amendment activity motivated the decision to take retaliatory action. Bridges v. Gilbert, 557 F.3d 541, 553 (7th Cir. 2009). The adverse action need not independently violate the Constitution, rather "a complaint need only allege a chronology of events from which retaliation may be inferred." Id. The parties do not dispute that Plaintiff has filed numerous lawsuits while confined at Rushville TDF, or that filing a lawsuit is a protected First Amendment activity.

Assuming that Plaintiff's prior lawsuits motivated the actions of Defendant Jumper and Defendant Caraway, Plaintiff's retaliation

claims still fail.  Plaintiff must show that he suffered a deprivation likely to deter future First Amendment conduct.  See Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness.").

Whatever restrictions Plaintiff endured as a result of his placement on close management status did not deter him from filing this lawsuit while the restrictions were still in place.  See (Doc. 1) (filed February 7, 2014); (Doc. 76-3 at 2) (January 15, 2014 Behavioral Committee notes extending close management status to February 9, 2014).  Plaintiff has continued to file lawsuits since the events in this lawsuit transpired.  See, e.g. Carpenter v. Steffens, No. 16-CV-4037 (C.D. Ill., filed Feb. 22, 2016); Carpenter v. Winters, No. 15-CV-3021 (C.D. Ill., filed Apr. 14, 2015).

Therefore, the Court finds that no reasonable juror could conclude that Defendants Jumper and Caraway retaliated against Plaintiff.

**IT IS THEREFORE ORDERED:**

1) Defendants' Motion to Dismiss Gregg Scott [110] is GRANTED.  Clerk is directed to terminate Defendant Scott.  Defendants' Motion to Join [119] is GRANTED.

2) Plaintiff's Motion for Order [113] and Motion to Secure Documents [116] are DENIED.  Plaintiff's Motion for Order [123] is DENIED.

3) Defendants' Motion for Leave to File Document Under Seal [77] is DENIED with leave to renew.  Defendants' Motion for Summary Judgment [76] is GRANTED.  Clerk is directed to terminate Defendants Jumper, Caraway, Lodge, Reid, and Louck.

4) Defendants' Motion for Sanctions [99] is GRANTED.  As detailed above, Defendants shall re-serve any interrogatories to which they seek answers within 14 days of this Order and file a Notice of Compliance indicated they have done so.  Within 30 days of being served, Plaintiff shall answer the discovery requests in a manner consistent with the Court's previous order.  Failure to do so will result in dismissal of this case.  Discovery is reopened solely for Plaintiff to respond to these discovery requests and shall be completed by October 4, 2016.  Any dispositive motions shall be filed by November 4, 2016.

5) Defendants' Motion to Substitute Counsel [120] is DENIED as moot.  See (Doc. 72 at 3) (granting the same relief).

ENTERED:     August 23, 2016.

FOR THE COURT:

*s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
